IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RICHARD P. KRUEGER, JR., et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-20-885 |
| MICHAEL ANGELOS, et al., | * | |
| Defendants. | * | |

\*\*\*\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Dismiss filed by Defendants Michael Angelos, Morgan Bailey, Mauro Dal Bo, Bayard Hogans, Mark Schmidt, Bill Wade, Gregory Waidlich, and Douglas Wolfe, in their capacities as the Management Trustees of the Steamship Trade Association of Baltimore, Incorporated-International Longshoremen's Association ("STA-ILA") (AFL-CIO) Pension Fund; the STA-ILA (AFL-CIO) Benefits Trust Fund; the STA-ILA (AFL-CIO) Severance and Annuity Fund; and the STA-ILA Vacation and Holiday Fund (ECF No. 22). For the reasons set forth below, the Court will grant the Motion.

### I.   BACKGROUND[1]

Each of the Funds whose trustees are parties to this dispute were created by an Agreement and Declaration of Trust ("Trust Agreement"). (Compl. ¶ 3, ECF No. 1). This dispute arises from certain changes to the Trust Agreements proposed by Plaintiffs Michael

---

[1] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

Coe, Scott Cowan, Richard P. Krueger, Jr., John D. Shade, Troy Nilsen, Timothy Krajewski, Christopher Kimble, David Konig, and Michael Cross, acting in their capacities as the Union Trustees of the STA-ILA (AFL-CIO) Pension Fund; the STA-ILA (AFL-CIO) Benefits Trust Fund; the STA-ILA (AFL-CIO) Severance and Annuity Fund; and the STA-ILA Vacation and Holiday Fund. Specifically, Plaintiffs sought to expand the definition of the term "Employer" in the Trust Agreements to include employers at the Port of Baltimore who are not members of the STA, but who engage in the same business as STA-member employers. (Id. ¶ 10). The vote on the motion to amend deadlocked, and Plaintiffs requested that the parties submit the dispute to an arbitrator. (Id. ¶ 11). Defendants refused to arbitrate the issue. (Id. ¶ 12).

The Trust Agreements established by the Funds contain identical language with respect to the provisions at issue in this dispute, including the following relevant parts:

ARTICLE I
DEFINITIONS

> Section 1.01 Employer: The term "Employer" as used herein shall mean the STA or an Employer Member or former Employer-Member of the STA. . . .
>
> Section 1.03 Employees: The term "Employee" as used herein shall include:
>
> (a) any employee covered by a collective bargaining agreement between the STA and the Union in the Port of Baltimore and Vicinity, being such employees who are so employed by one or more Employers in the Port of Baltimore and Vicinity;
>
> (b) any person employed by the Union, upon being proposed by the Union and after acceptance by the Trustees; and as to such Union personnel the Union shall be considered

an Employer within the meaning of this Agreement and Declaration of Trust and shall, on behalf of such personnel, make payments to the Trust at the time and at the rate of payment equal to that made by any other Employer; however, in no event shall the Union have any voice whatsoever in the designation of any Employer Trustees;

(c) any person employed as a member of the Administrative Office staff of the Pension and Benefits Funds, as a member of the Administrative staff of the STA of Baltimore-ILA Container Royalty Fund; or as an employee of the STA-ILA Seniority Board, Inc.; and to such personnel the Pension Fund, the Benefit Fund, the STA of Baltimore-ILA Container Royalty Fund, and the STA-ILA Seniority Board, Inc. shall be deemed Employers within the meaning of this Agreement and Declaration of Trust and shall, on behalf of such personnel, make payments to the Trust at the time and at the rate of payment equal to that made by any other Employer. . . .

## ARTICLE VIII
## ARBITRATION

Section 8.01 <u>Application of This Article</u>: In the event the Trustees cannot decide any matter or resolve any dispute because of a tie vote, or in the event decisions cannot be made because of the lack of a quorum at two successive meetings of the Trustees, then and in either of such events the Trustees shall attempt to select an impartial arbitrator to hear and determine the matter, issue or dispute. . . .

Section 8.03 <u>Awards</u>: The decision or award of the arbitrator shall be in writing and shall be final and binding on all parties and persons concerned and shall be made within ten (10) regular working days after the arbitrator receives all the evidence. The arbitrator shall not have the power or authority to change or modify the basic provisions of this Agreement. . . .

3

## ARTICLE XII
## AMENDMENTS

> Section 12.01 <u>By Trustees</u>: The provisions of this Agreement and Declaration of Trust may be amended by the Board of Trustees at a regular or special meeting, subject to the limitation set forth in Section 12.02 of this Article.
>
> Section 12.02 <u>Limitation on Right to Amend</u>: No amendment may be adopted which will alter the basic principles of this Agreement and Declaration of Trust, be in conflict with the Collective Bargaining Agreement, be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.

(Defs.' Mot. Dismiss ["Defs.' Mot."] at 2–5, ECF No. 22-1; Defs.' Mot. Ex. 1 ["Trust Agmt."] at 3–4, 33–34, 38, ECF No. 22-2).[2]

---

[2] The general rule is that a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See <u>Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC</u>, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see <u>Blankenship v. Manchin</u>, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." <u>Fare Deals Ltd. v. World Choice Travel.com, Inc.</u>, 180 F.Supp.2d 678, 683 (D.Md. 2001); accord <u>New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.</u>, 18 F.3d 1161, 1164 (4th Cir. 1994). If any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." <u>Fare Deals</u>, 180 F.Supp.2d at 683; accord <u>RaceRedi Motorsports, LLC v. Dart Mach., Ltd.</u>, 640 F.Supp.2d 660, 664 (D.Md. 2009).

Here, the Court is satisfied that it may review the Trust Agreement attached to Defendants' Motion to Dismiss without converting Defendants' Motion to a motion for summary judgment. The document is clearly integral to the Complaint and Plaintiffs have not questioned its authenticity. Moreover, the Trust Agreement is repeatedly referred to and relied upon in the Complaint. (<u>See, e.g.</u>, Compl. ¶¶ 9–10). Accordingly, the Court will consider the Trust Agreement in ruling on Defendants' Motion.

On November 13, 2019, Plaintiffs filed a one-count Complaint against Defendants petitioning the Court to appoint an impartial arbitrator to decide the dispute between the parties. (Compl. ¶¶ 13–16). Defendants filed a Motion to Dismiss on May 7, 2020. (ECF No. 22). Plaintiffs filed an Opposition on May 23, 2020. (ECF No. 23). Defendants filed a Reply on June 1, 2020. (ECF No. 24). Following an Order from the Court directing Plaintiffs to supplement their briefing, (ECF No. 25), Plaintiffs filed a Supplemental Opposition on January 11, 2021, (ECF No. 28). Defendants filed their Reply to Plaintiffs' Supplemental Opposition on January 25, 2021. (ECF No. 30).[3] After seeking and receiving leave from the Court, Plaintiffs submitted a Surreply on February 3, 2021. (ECF No. 33).

## II.   DISCUSSION

### A.   Standard of Review

Defendants frame their Motion to Dismiss as a motion under Federal Rule of Civil Procedure 12(b)(3), which permits dismissal on the basis of improper venue. See Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 (1974) (observing that an arbitration clause is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute"); Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 550 (4th Cir. 2006) ("[A] motion to dismiss based on a forum-selection

---

[3] Pursuant to the Court's Order, Defendants' Supplemental Reply was due on January 18, 2021. Defendants filed a Motion for Extension of Time alongside their Supplemental Reply. (ECF No. 29). Plaintiffs do not object to the extension of time. Accordingly, the Court will grant the Motion and consider Defendants' Supplemental Reply.

5

clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue.").

Plaintiffs contend that Defendants erred by moving to dismiss under Federal Rule of Civil Procedure 12(b)(3), arguing that the arbitration provisions at issue in this dispute do not constitute a forum-selection clause and that, in any event, venue in this Court is proper. (See Mem. Supp. Pls.' Opp'n Defs.' Mot. Dismiss ["Opp'n"] at 2–6, ECF No. 23-1). In their Reply, Defendants "respectfully request that in the event the motion is deemed better resolved as one brought under Rule 12(b)(6) or 12(b)(1), then the Court treat the motion as such and rule on the merits of the motion." (Reply to Pls.' Resp. to Defs.' Mot. Dismiss ["Reply"] at 3, ECF No. 24).

The only cases in this District in which the Court has decided motions to compel arbitration under a Rule 12(b)(3) standard are actions in which defendants moved to compel arbitration. See, e.g., Fusion Capital 1, LLC v. JB Bros., Inc., No. GLR-19-2947, 2020 WL 1854966, at *1 (D.Md. Apr. 13, 2020) (citing Stone v. Wells Fargo Bank, N.A., 361 F.Supp.3d 539, 548–49 (D.Md. 2019); In re Titanium Dioxide Antitrust Litig., 962 F.Supp.2d 840, 856–57 (D.Md. 2013)) ("The Court typically evaluates motions to dismiss premised on arbitration agreements under Federal Rule of Civil Procedure 12(b)(3), which governs improper venue."). In these cases, the fundamental question is where the parties will resolve the dispute, i.e., before a court or before an arbitrator.

Here, Plaintiffs are seeking an order compelling arbitration, and Defendants have moved to dismiss. Thus, the fundamental question is whether any outside tribunal will adjudicate the dispute. The options for Plaintiffs are an arbitrator or a or a stalemate on the

6

vote to amend the Trust Agreements. The Court therefore finds this case distinguishable from those where defendants have moved to compel arbitration. Instead, Defendants' Motion appears to argue that as alleged, Plaintiffs' Complaint fails to articulate facts sufficient to support the relief sought: an order from this Court appointing an impartial arbitrator to decide the dispute between the parties. Accordingly, the Court will evaluate Defendants' Motion under Rule 12(b)(6).

### 1. Rule 12(b)(6) Standard

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d

445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.   Analysis**

Defendants argue that the following language from the Trust Agreements prohibits an arbitrator from issuing a decision requiring the change sought by Plaintiffs: (1) "[t]he arbitrator shall not have the power or authority to change or modify the basic provisions of this Agreement"; and (2) "No amendment may be adopted which will alter the basic principles of this Agreement[.]" (Defs.' Mem. at 5). Specifically, Defendants argue that these provisions unambiguously preclude an arbitrator from issuing a decision to implement the change to the definition of "Employer" proposed by Plaintiffs, because such a change would have the effect of altering the basic principles and basic provisions of the Agreement. Plaintiffs disagree, relying primarily on two arguments: (1) Defendants cannot credibly assert that a change to the definition of the word "Employer" in the Trust Agreements alters a basic principle of the Agreements when the parties have previously

8

changed the definition of the word "Employee"; and (2) if the arbitrator were to side with Plaintiffs, the arbitrator would not be changing a basic provision of the Agreement, but rather implementing a change made by the Plaintiffs.[4] At bottom, the Court agrees with Defendants.

The following framework governs a federal court's ability to decide threshold issues of arbitrability:

> [E]xcept where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter. They then discharge this duty by: (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted.

Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 301 (2010) (internal quotation marks and citations omitted).

Here, the parties have not clearly and unmistakably provided that an arbitrator should determine issues of arbitrability; indeed, both parties agree that the Trust

---

[4] Defendants also rely on a host of out-of-circuit cases they assert stand for the proposition that "extraordinary" changes to the Trust Agreements of the type proposed by Plaintiffs are distinguishable from "ordinary" or "day-to-day management" acts, and that while the latter are arbitrable, the former are not. (See, e.g., Mot. Extend Time File Reply Pls.' Second Resp. Defs.' Mot. Dismiss ["Supp. Reply"] at 3–4, ECF No. 30). Plaintiffs respond that the courts in the cases cited by Defendants reached their decisions by interpreting the language contained in the contracts and agreements at issue in those cases, and the relevant contractual language in those cases is distinguishable from the language in the Trust Agreements. (See Supp. Opp'n Defs.' Mot. Dismiss ["Supp. Opp'n"] at 5–7, ECF No. 28). The Court agrees with Plaintiffs and accords little weight to the out-of-circuit cases that Defendants cite.

Agreements have not "delegated to an arbitrator the authority to determine whether an issue or dispute is substantively arbitrable." (Supp. Opp'n Defs.' Mot. Dismiss ["Supp. Opp'n"] at 2, ECF No. 28; see Defs.' Mot. at 9). Accordingly, that issue is for the Court to decide. With respect to which specific issues are arbitrable, the Supreme Court has clarified that it is for courts to "resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce. . . . [T]hese issues typically concern the scope of the arbitration clause and its enforceability." Granite Rock Co., 561 U.S. at 297 (citations omitted). In other words, "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002).

The dispositive question here is whether the current dispute between the parties, i.e., the deadlock over the proposed change to the definition of the term "Employer," is subject to the arbitration provision in the Trust Agreements. Accordingly, this is a question for the Court. Thus, the Court must decide whether the Trust Agreements are ambiguous about whether they cover the dispute at hand and, if so, whether Defendants have rebutted the resultant presumption in favor of arbitration.

Pursuant to the Trust Agreements, subject to certain exceptions and limitations, where the parties are unable to "decide any matter or resolve any dispute because of a tie vote," they have agreed to submit the dispute to binding arbitration. (Trust Agmt. at 33). The following limiting language in the Trust Agreements is at issue here: (1) "[t]he arbitrator shall not have the power or authority to change or modify the basic provisions of

10

this Agreement," (id. at 34) (the "Basic Provisions Clause"); and (2) "[n]o amendment may be adopted which will alter the basic principles of this Agreement," (id. at 38) (the "Basic Principles Clause"). Importantly, the Trust Agreements do not define "basic principles" or "basic provisions." The Court will consider the two clauses in turn.

With respect to the Basic Principles Clause, Defendants argue that changing the definition of the term "Employer" would modify a basic principle of the Trust Agreements because "there is no more basic and fundamental change in an agreement than the identity of the parties, in this case the STA-represented employers, who are subject to the terms and conditions of the agreement." (Mot. Extend Time File Reply Pls.' Second Resp. Defs.' Mot. Dismiss ["Supp. Reply"] at 4, ECF No. 30). The Court disagrees. In the absence of a contractual definition or other evidence regarding the parties' intent, the Court turns to guidance from secondary sources. Black's Law Dictionary defines a "principle" as a "basic rule, law, or doctrine; esp., one of the fundamental tenets of a system." Principle, Black's Law Dictionary (11th ed. 2019). Merriam-Webster defines a "tenet" as "a principle, belief, or doctrine generally held to be true."[5] In the context of the Trust Agreements, the Court would view a change to a "basic principle" as a change to one of the fundamental purposes of the Agreements, e.g., a global reallocation of the monies held by the Funds. At the very least, the Court finds it ambiguous whether the definition of the term "Employer" constitutes a "basic principle" of the Trust Agreements. This ambiguity creates a

---

[5] Tenet, Merriam-Webster, https://www.merriam-webster.com/dictionary/tenet (last visited Jan. 26, 2021).

11

presumption of arbitrability that Defendants have failed to rebut. Accordingly, the Court finds that the Basic Principles Clause does not preclude arbitration of this dispute.

As to the Basic Provisions Clause, Defendants argue that "[i]f one were tasked with outlining the 'basic provisions' of these Trust Agreements, the starting place would be with the parties to the Agreements – the STA and the Union." (Supp. Reply at 6). Plaintiffs correctly note that this formulation is inaccurate; their proposed change to the Trust Agreements does not alter the parties to the Agreements, but rather the scope of eligible employers under the Agreements. (Supp. Opp'n at 12). Moreover, Plaintiffs assert that they "are not asking an arbitrator to write any new language, or modify or delete any existing language." (Supp. Opp'n at 13). Instead, Plaintiffs assert that "the arbitrator's task would merely be to, after hearing the parties' respective positions concerning the motion [to expand the definition of Employer], cast a deciding vote—yes or no—on whether to implement the motion as an amendment to the Trust Agreements." (Id.).

In a legal document, the word "'provision" refers to a "clause in a statute, contract or other legal document." Provision, Black's Law Dictionary (11th ed. 2019). Thus, there is no question as to whether the definition of the term "Employer" constitutes a provision; the Court must only determine whether it constitutes a "basic" provision. In the context of a series of agreements established between a union and a management association, the Court is compelled to conclude that the definition of which entities constitute "Employers" under the Agreements unambiguously constitutes a "basic provision" of the Agreements.

The Court is similarly unpersuaded by Plaintiffs' argument that the arbitrator would not be changing the "basic provisions" of the Agreements, but rather would only be

deciding whether to <u>implement</u> the Plaintiffs' motion to make such a change. This is a distinction without a difference—the result would require an order from the arbitrator that would have the effect of changing a basic provision of the Agreements. Under the Agreements, "[t]he arbitrator shall not have the power or authority" to make such a change. (Trust Agmt. at 34). Thus, the Court finds that the Basic Provisions Clause unambiguously prohibits an arbitrator from awarding Plaintiffs the relief they seek. The Complaint therefore fails to state a claim for which relief may be granted. Accordingly, the Court will dismiss the Complaint.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 22). A separate Order follows.

Entered this 19th day of February, 2021.

                                                      /s/
                                    George L. Russell, III
                                    United States District Judge